IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| HALEY GAZERRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| LHC GROUP, INC., and | ) | |
| FLOYD HOMECARE, LLC, | ) | _____ |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

Plaintiff HALEY GAZERRO hereby states claims for relief under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and Title VII, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), on the grounds stated below.

## Jurisdiction and Venue

1. The Court has original subject-matter jurisdiction pursuant to (a) 28 U.S.C. § 1331 because this action arises under the laws of the United States, (b) 28 U.S.C. § 1337 because this action arises under Acts of Congress regulating commerce, (c) 29 U.S.C. § 2617(a)(2) because this action arises under the FMLA, and (d) 42 U.S.C. § 2000e-5(f)(3) because this action is brought under Subchapter VI of Title VII.

2. Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Northern District of Georgia, Rome Division.

## The Parties

3. Plaintiff HALEY GAZERRO ("PLAINTIFF") is a citizen of the United States and during her employment resided in the Northern District of Georgia in Bartow County, Georgia.

4. Defendant LHC GROUP, INC. is a foreign for-profit corporation doing business in the Northern District of Georgia with its principal office located at 901 Hugh Wallis Road South, Lafayette, Louisiana 70508.

5. Defendant FLOYD HOMECARE, LLC is a domestic limited liability company doing business in the Northern District of Georgia with its principal office located at 901 Hugh Wallis Road South, Lafayette, Louisiana 70508.

6. Defendant FLOYD HOMECARE, LLC's operations are directed and controlled by Defendant LHC GROUP, INC.

7. Defendant LHC GROUP, INC. and Defendant FLOYD HOMECARE, LLC (collectively, "DEFENDANTS") are subject to the personal jurisdiction of this Court.

8. DEFENDANTS can each be served through their registered agent for service of process: Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

## Compliance With Administrative Prerequisites

9. PLAINTIFF has timely complied with all legally required administrative prerequisites before filing this action.

10. On or about June 27, 2021, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation by DEFENDANTS on account of her sex including pregnancy.

11. On or about August 1, 2022, the EEOC issued to PLAINTIFF notices of dismissal and right to sue DEFENDANTS.

## Grounds for this Action

12. PLAINTIFF is a former employee of DEFENDANTS.

13. PLAINTIFF was employed by DEFENDANTS from on or about May 28, 2019 to on or about May 28, 2021.

14. Throughout PLAINTIFF"s employment, DEFENDANTS provided home health services throughout the United States, including Georgia.

15. Throughout PLAINTIFF's employment by DEFENDANTS, she worked as a sales representative selling DEFENDANTS' services to medical providers in Bartow County.

16. Throughout PLAINTIFF's employment by DEFENDANTS, her job duties included calling on hospitals, physicians, assisted living facilities, and skilled nursing facilities to try to convince them to hire DEFENDANTS

to provide home health care for their patients by using DEFENDANTS' nurses and therapists.

17. Throughout PLAINTIFF's employment by DEFENDANTS, she worked out of DEFENDANTS' Cartersville, Georgia office at 775 West Avenue, Ste B, Cartersville, Georgia 30120.

18. DEFENDANTS' manager with supervisory responsibility over PLAINTIFF was Tyler Mitton based at DEFENDANTS' office at 775 West Avenue, Suite B, Cartersville, Georgia 30120.

19. On or about January 25, 2021, PLAINTIFF notified her supervisor, Tyler Mitton, that she was pregnant and planned to take 12 weeks of maternity leave beginning close to her delivery due date of July 30, 2021.

20. Over the next several months, PLAINTIFF asked Mitton to provide her with the appropriate paperwork to complete for her maternity leave under the FMLA.

21. Mitton never gave PLAINTIFF the FMLA paperwork she requested.

22. Over this same period, PLAINTIFF asked Mitton to provide her with the necessary information identifying the appropriate person to contact in DEFENDANTS' Human Resource ("HR") Department so that PLAINTIFF could discuss coverage of her maternity leave under the FMLA.

23. Mitton never gave PLAINTIFF the information she requested regarding DEFENDANTS' HR Department.

24. PLAINTIFF took a vacation, pre-approved by Mitton, from Friday, April 9, 2021 to Sunday April 18, 2021.

25. On April 19, 2021, when PLAINTIFF returned to the office, Mitton asked her to meet with him that day.

26. During the April 19, 2021 meeting, Mitton told PLAINTIFF that he was putting her on a Corrective Action Plan—just three months before PLAINTIFF was scheduled to take 12 weeks of FMLA maternity leave—on the pretext that PLAINTIFF's April sales numbers were "pacing at 24%."

27. PLAINTIFF had no idea what Mitton meant when he said "pacing at 24%" during their April 19, 2021 meeting.

28. Prior to the April 19, 2021 meeting, Mitton had never given PLAINTIFF any specific sales goals for April 2021.

29. Mitton knew PLAINTIFF had not worked the previous 10 days in April 2021, because he had pre-approved her vacation covering that period.

30. Although PLAINTIFF previously had slow months for sales prior to April 2021—when she was not on vacation—Mitton had never previously given her a Corrective Action Plan.

31. Prior to April 19, 2021, Mitton had never told PLAINTIFF that her performance was deficient in any respect.

32. Prior to April 19, 2021, Mitton had never documented that PLAINTIFF's her performance was deficient in any respect.

33. Many other sales representatives who reported to Mitton—but who were not pregnant—had poor sales numbers throughout 2020 and 2021.

34. Mitton did not put any of these non-pregnant sales representatives with poor sales numbers on a Corrective Action Plan during 2021 and up through May 28, 2021.

35. During the April 19, 2021 meeting, PLAINTIFF complained to Mitton that she believed Mitton was discriminating against her because PLAINTIFF was pregnant and planned to take FMLA maternity leave.

36. In the Corrective Action Plan that Mitton gave PLAINTIFF, he assigned her weekly goals covering only the next four weeks.

37. Mitton had never previously given PLAINTIFF weekly goals in 2020 or 2021.

38. In early May 2021, based on PLAINTIFF's own research—with no assistance from Mitton—PLAINTIFF spoke to a representative in DEFENDANTS' HR Department about taking FMLA maternity leave.

39. The HR representative provided PLAINTIFF with the necessary FMLA paperwork for her physician to complete.

40. On or about May 10, 2021, PLAINTIFF's physician submitted the completed FMLA paperwork to DEFENDANTS.

41. During the four-week period following the April 19, 2021 meeting between PLAINTIFF and Mitton, PLAINTIFF exceeded her assigned sales goals during two weeks and did not meet her assigned goals during two weeks, as follows:

|        | **Goal** | **Actual** | **Differential** |
|--------|------|--------|--------------|
| Week 1 | 4    | 5      | +1           |
| Week 2 | 5    | 7      | +2           |
| Week 3 | 6    | 2      | -4           |
| Week 4 | 7    | 2      | -5           |
| Total  | 22   | 16     |              |

42. On May 28, 2021, Mitton called PLAINTIFF on the telephone.

43. During the May 28, 2021 call, Mitton told PLAINTIFF that he was firing her because PLAINTIF's sales numbers had not improved over the prior 30 days.

44. Mitton had issued Corrective Action Plans to other sales representatives who were not pregnant that gave these individuals 90 days to correct their performances—while giving PLAINTIFF only 30 days to correct her performance.

45. Mitton fired PLAINTIFF two months before she was scheduled to take 12 weeks of FMLA maternity leave.

46. DEFENDANTS created obstacles that prevented PLAINTIFF from achieving the goals Mitton assigned to her in the Corrective Action Plan.

47. Throughout the month of May 2021, DEFENDANTS had staffing problems, which included (among others) DEFENDANTS not having an adequate number of nurses and therapists to visit patients at home.

48. When hospitals, physicians, assisted living facilities, and skilled nursing facilities on which PLAINTIFF made sales calls learned about DEFENDANTS' staffing problems, many of them decided not to use DEFENDANTS for their patient needs—resulting in PLAINTIFF losing potential sales.

49. Mitton was aware of DEFENDANTS' staffing issues.

50. Mitton ignored the fact that DEFENDANTS' staffing problems prevented PLAINTIFF from achieving the sales goals that he set in her Corrective Action Plan in deciding to fire her.

51. After Mitton fired PLAINTIFF, he hired a male to replace her.

52. As of on or about May 28, 2021, PLAINTIFF was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

53. As of on or about May 28, 2021, PLAINTIFF was employed by DEFENDANTS for at least 12 months.

54. As of on or about May 28, 2021, PLAINTIFF was employed by DEFENDANTS for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of PLAINTIFF's FMLA maternity leave scheduled for July 2021.

55. As of on or about May 28, 2021, PLAINTIFF was employed by DEFENDANTS at a worksite where 50 or more employees were employed by DEFENDANTS within 75 miles of that worksite.

56. As of at least on or about May 28, 2021, DEFENDANTS each engaged in commerce or in an industry or activity affecting commerce within the meaning of 29 U.S.C. § 2611(1).

57. As of at least on or about May 28, 2021, DEFENDANTS each employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year within the meaning of 29 U.S.C. § 2611(4).

58. As of on or about May 28, 2021, DEFENDANTS were each an "employer" within the meaning of 29 U.S.C. § 2611(4).

59. From on or about May 28, 2019 to on or about May 28, 2021, DEFENDANTS were each an "employer" within the meaning of 42 U.S.C. § 2000e(b).

60. From on or about May 28, 2019 to on or about May 28, 2021, DEFENDANTS each engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(b).

61. From on or about May 28, 2019 to on or about May 28, 2021, DEFENDANTS each employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year within the meaning of 42 U.S.C. § 2000e(b).

62. From on or about May 28, 2019 to on or about May 28, 2021, DEFENDANTS each had more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year within the meaning of 42 U.S.C. § 1981a.

63. From on or about May 28, 2019 to on or about May 28, 2021, PLAINTIFF has been an "employee" of DEFENDANTS within the meaning of 42 U.S.C. § 2000e(f).

## COUNT 1
## 29 U.S.C. § 2615
### (Interference in Violation of the FMLA)

64. Paragraphs 1-63 above are re-alleged and incorporated by reference as if fully set forth herein.

65. By engaging in the conduct described above in Paragraphs 10-51 and 52-58, DEFENDANTS unlawfully interfered with PLAINTIFF's FMLA rights with respect to firing PLAINTIFF and other terms, conditions, and

benefits of employment, including with respect to the Corrective Action Plan, all in violation of the FMLA, 29 U.S.C. §§ 2611 *et seq.*

66. By engaging in the conduct described above in Paragraphs 10-51, DEFENDANTS willfully—*i.e.,* voluntarily, deliberately, intentionally, and with reckless disregard—violated the FMLA with respect to PLAINTIFF, in violation of 29 U.S.C. § 2615.

67. DEFENDANTS' conduct giving rise to this action was not in good faith and not based on any reasonable grounds for believing that such conduct did not violate the FMLA.

68. As a result of DEFENDANTS' unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, lost wages, salary, employment benefits and other compensation.

69. PLAINTIFF seeks lost wages, salary, employment benefits, and other compensation, and an equal amount as liquidated damages, nominal damages, pre- and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to the FMLA, and all in an amount to be determined as specified by law.

70. PLAINTIFF's exercise of her FMLA rights to take leave was a motivating factor in DEFENDANTS' decision to fire PLAINTIFF.

## COUNT 2
## 29 U.S.C. § 2615
## (Retaliation in Violation of the FMLA)

71. Paragraphs 1-63 above are re-alleged and incorporated by reference as if fully set forth herein.

72. By engaging in the conduct described above in Paragraphs 10-51 and 52-58, DEFENDANTS unlawfully retaliated against PLAINTIFF for exercising her FMLA rights with respect to firing PLAINTIFF and other terms, conditions and benefits of employment, including with respect to the Corrective Action Plan, all in violation of the FMLA, 29 U.S.C. §§ 2611 *et seq*.

73. By engaging in the conduct described above in Paragraphs 10-51, DEFENDANTS willfully—*i.e.,* voluntarily, deliberately, intentionally, and with reckless disregard—violated the FMLA with respect to PLAINTIFF, in violation of 29 U.S.C. § 2615.

74. DEFENDANTS' conduct giving rise to this action was not in good faith and not based on any reasonable grounds for believing that such conduct did not violate the FMLA.

75. As a result of DEFENDANTS' unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, lost wages, salary, employment benefits and other compensation.

76. PLAINTIFF seeks lost wages, salary, employment benefits, and other compensation, and an equal amount as liquidated damages, nominal

damages, pre- and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to the FMLA, and all in an amount to be determined as specified by law.

77. PLAINTIFF's exercise of her FMLA rights to take leave was a motivating factor in DEFENDANTS' decision to fire PLAINTIFF.

## COUNT 3
## 42 U.S.C. § 2000e-2
## (Pregnancy Discrimination)

78. PLAINTIFF re-alleges and adopts Paragraphs 1-63 above and incorporates them by reference herein.

79. By engaging in the conduct described above in Paragraphs 10-51 and 59-63, DEFENDANTS unlawfully discriminated against PLAINTIFF because of her pregnancy with respect to termination and other terms, conditions, and benefits of employment, including with respect to the Corrective Action Plan, all in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*.

80. As a result of DEFENDANTS' unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

81. PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to Title VII, all in an amount to be determined as specified by law.

82. PLAINTIFF"'s pregnancy was a motivating factor in DEFENDANTS' decision to fire her.

83. Compared to PLAINTIFF, DEFENDANTS gave more favorable treatment to similarly situated employees who were not pregnant.

84. Compared to PLAINTIFF, DEFENDANTS gave more favorable treatment to similarly situated employees who did not seek maternity leave.

## COUNT 4
## 42 U.S.C. § 2000e-2
## (Sex Discrimination)

85. PLAINTIFF re-alleges and adopts Paragraphs 1-63 above and incorporates them by reference herein.

86. By engaging in the conduct described above in Paragraphs 10-51 and 59-63, DEFENDANTS unlawfully discriminated against PLAINTIFF because of her sex with respect to termination and other terms, conditions, and benefits of employment, including with respect to the Corrective Action Plan, all in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*.

87. As a result of DEFENDANTS' unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

88. PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to Title VII, all in an amount to be determined as specified by law.

89. PLAINTIFF"s sex was a motivating factor in DEFENDANTS' decision to fire her.

90. Compared to PLAINTIFF, DEFENDANTS gave more favorable treatment to similarly situated male employees.

91. Compared to PLAINTIFF, DEFENDANTS gave more favorable treatment to similarly situated male employees who did not seek maternity leave.

**COUNT 5**
**42 U.S.C. § 2000e-3**
**(Retaliation)**

92. PLAINTIFF re-alleges and adopts Paragraphs 1-63 above and incorporates them by reference herein.

93. By engaging in the conduct described above in Paragraphs 10-51 and 59-63, DEFENDANTS unlawfully retaliated against PLAINTIFF because she complained about pregnancy discrimination with respect to terminating her, and other terms, conditions, and benefits of employment, including with respect to the Corrective Action Plan, in violation of Title VII, 42 U.S.C. 2000e *et seq*.

94. As a result of DEFENDANTS' unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

95. PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to the ADA, and all in an amount to be determined as specified by law.

96. PLAINTIFF"s complaint about pregnancy discrimination was a motivating factor in DEFENDANTS' decision to fire her.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff HALEY GAZERRO respectfully prays that this Court enter judgment in favor of PLAINTIFF and against DEFENDANTS for:

A. Lost wages, employment benefits, and other compensation to which PLAINTIFF is entitled, pursuant to the FMLA and Title VII.

B. Liquidated damages, pursuant to the FMLA.

C. Compensatory damages including, but not limited to, pecuniary losses, emotional pain, suffering, and inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or intangible injuries to which PLAINTIFF is entitled, pursuant to Title VII.

D. Punitive damages to which PLAINTIFF is entitled, pursuant to Title VII.

E. All reasonable attorney's fees and costs of the action through entry of a final non-appealable judgment, pursuant to the FMLA and Title VII, including all reasonable attorney's fees and costs for:

(1) the time spent plus costs reasonably incurred prior to and throughout this action relating to the claim of PLAINTIFF under the FMLA and Title VII;

(2) the time spent litigating both the entitlement to and amount of attorney's fees and costs incurred prior to and throughout this

action plus costs of investigation and litigation reasonably incurred relating to the claim of PLAINTIFF under the FMLA and Title VII, whether in connection with any settlement, compromise, any accepted offer of judgment under Fed. R. Civ. P. 68, or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58;

    (3)    the time spent litigating the fairness and reasonableness of any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68, or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58; and

    (4)    the time spent explaining to PLAINITFF any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68, or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58.

    F.    Pre-judgment and post-judgment interest on all amounts awarded pursuant to the FMLA and Title VII, including lost compensation, litigation expenses including attorney's fees, costs, and costs of investigation and litigation of this action.

    G.    A declaration that DEFENDANTS engaged in unlawful employment practices in violation of the FMLA and Title VII with respect to PLAINTIFF.

H. An order directing DEFENDANTS to include in PLAINTIFF's personnel file a copy of the operative complaint and any favorable verdict and judgment in this action.

I. All such other legal and equitable relief to which PLAINTIFF is entitled as a matter of law and equity.

J. All such other and further relief as is deemed just and proper.

## DEMAND FOR JURY TRIAL

**Plaintiff demands a jury trial on all issues triable of right by a jury.**

Respectfully submitted,

*/s/ Marc N. Garber*
ALAN H. GARBER
Georgia Bar No. 283840
ahgarber@garberlaw.net
MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
(678) 560-6685
(678) 560-5067 (facsimile)

*Attorneys for the Plaintiff*